Case 23-1486, Mark Susselman v. Washtenaw County Sheriff's Office, et al. Argument not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by the defendants. Counsel, Mr. Susselman, you may proceed. May it please the Court, Mark Susselman on behalf of the plaintiff. I'm going to refer to the plaintiff in the third person. And I want to reserve five minutes for rebuttal. Go ahead. So, this is a lawsuit. It involves a number of claims relating to the enforcement of a Michigan statute which states a person shall not refuse to comply with a lawful order or direction of a police officer when that officer for public interest and safety is guiding, directing, controlling, or regulating traffic on the highways of this state. And there's no dispute that at the time the plaintiff drove around Deputy King's patrol car, that neither Deputy King nor any other patrol officer was in the vicinity of the patrol vehicle which had its emergency lights flashing. There were no traffic cones down. There were no flares. There were no barricades preventing the plaintiff from going around that vehicle. And he proceeded around the vehicle and then he saw what turned out to be Deputy King running towards him in the lane that he was driving down which was westward. And the vehicle was in the rear. And they've admitted that he was not near his vehicle. No one else was near the vehicle. And they proceeded first to charge plaintiff with failing to yield which was not the case. And so they dismissed, the prosecutor agreed to dismiss that. And then they issued a second ticket which had issues regarding the day they said this occurred and the time which was different from the original ticket. But they claimed that the plaintiff had violated the statute. But they acknowledged that Mr. King was not near the vehicle. And there were no patrol people near the vehicle. And the plaintiff had stopped by the vehicle to ask what to do. And there was nobody to provide guidance. And so the prosecutor argued. Suppose, I think you said in your brief.  If the patrol vehicle had been in the absolute middle of the roadway, you still don't think it would violate the statute? Oh, no, I don't dispute that. But it wasn't. If the vehicle had been blocking both lanes, I said then you should have blocked both lanes to prevent anybody from going down either lane. But it was only blocking the eastbound, the westbound lane. And the plaintiff drove around it in the eastbound lane. So you think, so why wouldn't, I mean, from the officer's perspective, I would think that they could reasonably presume if you saw a car with flashing lights and the only lane in which you're allowed to drive that you wouldn't drive around the car. And that because it would be violating the traffic laws driving on the wrong side of the road. Maybe that was a mistaken view. But I don't understand why that wouldn't at least establish probable cause of a violation of the statute. They didn't charge me with a violation of another statute. They charged the plaintiff with a violation of this statute saying he failed to obey a police officer. So in my hypo where I said if he parked in the middle, you were talking, and I thought you were conceding that if he had parked in the middle that it would violate the statute with which you were charged. If he had blocked both lanes in order to get around him, the plaintiff would have had to drive on the shoulder, which I believe, I don't know. I believe it could have been a violation of a Michigan statute. But the plaintiff wasn't charged with that. I don't think it would violate the MCL 257.602. Excuse me? Yeah. You don't think it would violate the statute with which you were charged? I believe the statute, as it reads, requires that a human being directing traffic. What if there was a sign that said do not enter fatal traffic accident, and the officer had this sign in the back of his car, and he pulls out the sign, and he puts it there, and then he walks off? And you think that that would still not be a violation of? Yeah, I don't disagree with that, but that's not what happens. But why? I mean, we can communicate orally with words, or we can communicate with a car with its lights flashing, parked a police car with its lights flashing, parked a category like this, which most people would suggest means do not enter. And I didn't enter the lane in which the patrol car was blocking. I didn't enter that lane. I entered a lane that wasn't being blocked. But it wasn't illegally, I suppose. I don't believe under this statute. You conceded it would have been illegal to drive on the shoulder. I don't know why that concession would not cover driving on the wrong side of the road. Again, I believe this statute requires that it be a human being directing traffic, and there was no human being. But let me get to the further point. I filed an appeal in the Washington Circuit Court, and I made this very argument, and the prosecutor didn't file an appellate brief. And under Michigan law, that constitutes a concession. Why don't we focus? You know, we can't do anything about your parking violation. Why don't you talk to us about the constitutional violation of which our jurisdiction might be based. So the plaintiff's position is that the statute wasn't violated, and yet they filed a criminal misdemeanor claim against them. Let's talk about the constitutional rights implicated, not what happened. So if the statute wasn't violated, then there was no probable cause to charge the plaintiff with violating that statute. And that raises the question, and the plaintiff filed a substitute process violation claim, which was dismissed by the district court. But every case that's been decided by this court since Albright v. Oliver, and by the Supreme Court, has involved, under Albright v. Oliver, a seizure. And if there's a seizure, whether there's probable cause or not, the claim has to be under the Fourth Amendment. If there is no seizure, it can't be under the Fourth Amendment. And there is dicta, first of all, in- Was there a seizure here? There was no seizure. There was no seizure. So there was dicta in Thomas v. Clark. I take it there was no search either. No search, no. And the plaintiff didn't allege a violation of the Fourth Amendment. There was none. Then why are we talking about facts that might go to a violation which does not provide the basis of your lawsuit? Well, the violation, if there's not probable cause and no seizure, the question is, is there a violation of the Constitution? And in dicta- He's arguing that violates substantive due process. Substantive due process under the Fourteenth Amendment. And dicta in Thompson v. Clark, they suggested, but they weren't ruling, that could be a violation. In Albright v. Oliver, Justices Stevens and Blackmun and Kennedy, I believe, suggested it could be a violation, but that wasn't before them. You say the standard is assuming there is a right of substantive due process. Well, generally there are two standards on a substantive due process. Does it shock the conscience? Why did it shock the conscience? Or was it capricious and arbitrary? What are you arguing? Which one? I'm arguing capricious and arbitrary. Okay, so why was it capricious and arbitrary? Because in an email exchange that the district court pretty much ignored, when the second ticket, Charging violation of failure to obey a police officer directing traffic, was issued, after the first ticket had been dismissed, the plaintiff emailed him, What's going on here? You dismissed the first ticket. And he said, My hands are tied because I represent the police department and they want me to have a second ticket issued. But then the plaintiff obtained an email exchange that showed that wasn't at all what happened. After the plaintiff communicated with the prosecutor and said, There was no violation of the failure to yield. And I request that you dismiss it. He agreed, yes. I agree with you. I'll dismiss it. And that was how they ended it. Then they issued a second ticket for violation of the statute. And he said, My hands are tied. But in the email exchange, he says to Deputy King, Mr. Schultz has made a good point. I suggest we dismiss that ticket so he'll feel like he's a quote-unquote badass. Let me ask you, the second ticket seems to go to what the officer originally said to the plaintiff. Because according to your complaint, it says, He then said the plaintiff was getting a ticket for avoiding an emergency vehicle with lights on and entering a crime scene. That's in paragraph 16 of your pleading. So isn't that ultimately what the ticket was all about? The second ticket that you got? Well, those statements weren't in the ticket. The ticket was that this statute had been violated, disobeying the police officer, providing guidance. But that assertion that you said was made is the same assertion that supports the second ticket. Wouldn't you agree with that? Well, yeah. But still, there was nobody providing guidance as to what to do. But you agree that that's the same point? That's what he stated. Yeah, he stated that. But my response was, How would I know that there was a fatality up ahead? It wasn't even visible. You couldn't even see the vehicle accident up ahead, far up ahead. So, I mean, if you believe that there was probable cause for issuing that second ticket under the statute, then I don't have a case. I believe that there was a probable cause, and in the absence of probable cause and no seizure under case law, including in France's decision. I think we're about at the end of this answer. And you're about to go on to something else. And your time's been up for some time. You'll have your rebuttal time. Good morning, Your Honors. And may it please the Court, James Buster on behalf of the County of Washtenaw and Deputy King. I'm going to keep my remarks pretty brief here. I think Judge Murphy nailed it on the head here that it was very reasonable for this officer to understand that when he places his vehicle across the only lane of traffic that someone should be driving to go eastbound, that that's the signal, the command, the direction, don't continue going this way. Why didn't you argue, though? I mean, the argument of a lack of probable cause would have, it seems to me, almost automatically kicked a lot of the claims. But you kind of forfeited that argument. Do you concede you forfeited it? No, I do not concede that we have. You said that probable cause wasn't an issue in this case in your appellee's brief, I thought. That was, I don't believe that's quite how it was. What we had argued in the appellee's brief was that in our 12B6 motion, that was just not a basis we had raised. There were other reasons why these claims failed without having to touch probable cause. And that was what we addressed. Mr. Susselman, in his response brief, said, no, no, no, this is all about probable cause. And then our reply, we said, well, no, there's other reasons, but even if we were to address that point, you lose. And then we continued that frame of argument into our appeal briefing. And then further, Judge Bush, I think you also hit the nail on the head as well, that Mr. Susselman has conceded that that first ticket with the charge there was the same thing he was actually prosecuted for. The significance for his First Amendment claim, however, is that he was charged for the exact same thing that he admits he was going to be issued a ticket for before he yelled at the officer. The thrust of Mr. Susselman's claim is that the second ticket for that charge was only issued because he yelled at the officer. But ultimately, what this case has become about is that Deputy King concluded that he had violated the statute. I reasonably believe that he had. And that's ultimately what he was prosecuted for. Nothing in between changes that outcome. So you have a causation argument for your speech claim. And then for your petition claim, you switch to citing our unpublished decision, and I think it's called Pepper. I don't know how to pronounce it. Do you think the causation argument would also carry over to the petition claim? The reason I ask that is I am somewhat troubled by the notion that sending a letter to a prosecutor about charges would not qualify as petitioning activity. Now, there might be a question about whether that letter was the basis for the ticket, so that would be causation. But the idea that sending a letter to a government official, asking the government official to take or refrain from taking action, does not qualify as petitioning the government within the meaning of the First Amendment, I find that somewhat troubling. And that's a valid point, Your Honor. However, I think it's pretty clear, however, that there isn't a right to plea bargain. There isn't a right necessarily to have the prosecutor agree with your defense. And so if putting up a defense to a prosecution was enough to bring in the First Amendment, then the implication there is that in potentially every criminal prosecution on down, there can now be a First Amendment claim if you ask the prosecutor to do X and that doesn't occur and something else happens. So that would really open up those gates. And my understanding, Your Honor, is there is a separate basis within the system for a vindictive prosecution. So that issue of, well, the prosecutor is just simply doing something just to make my life miserable, not based on a good faith basis, there are separate mechanisms to handle that situation that don't require the court to bring in the First Amendment to deal with those issues. In terms of the substantive due process claim in Lester, which we cite in our brief, I think the court got it right. Judge Murphy authored that decision. Your friend on the other side suggests Lester is wrong. I would suggest that it's not on point. And the reason I would say that is because it struck me as a classic Fourth Amendment case and I was just laying out the framework for Fourth Amendment when there has been a seizure. So what do you think, setting aside Lester as an original matter, do you think there should be any room for substantive due process in the context of when there isn't a search or seizure that would implicate the Fourth Amendment? Your Honor, I think on that, so in Albright the court laid out the reason that there's not a guidepost or other mechanisms, but even setting the Fourth Amendment aside, I think Justice Kennedy's analysis makes a very good point under the court's precedence in Parrott, which is if there's a state remedy post deprivation that can deal with that issue, then the courts will not make it a constitutional issue and will allow the state courts to deal with that. He reasoned that that would be a malicious prosecution claim, which has been brought here and which Michigan recognizes. So there is a quote-unquote post deprivation ability for Mr. Sussman and others to have a malicious prosecution claim brought, because that's essentially what his substantive due process claim is. The other difficult aspect with managing that type of claim from a substantive due process perspective is what would the standard be and how would you determine whether or not that had been met? Those are very much unclear, and so if there's already that guidepost, that's the way the court should go. And with that, Your Honors, unless the court has more questions, I think I've addressed Mr. Sussman's points in our argument, and I'll rely on the briefing for the remainder. Thank you. Thank you, Your Honors. Ms. Dembinski? Yes, good morning, Your Honors. Nancy Beda Dembinski on behalf of the Appali Superior Township. Much of my argument also comes on brief. In this case, the county was the original defendant in the case and had moved for dismissal under 12B6. When the township came in, the court had ruled on the county's 12B6 motion, and we essentially adopted arguments that the district court had found persuasive as to the county. I did just want to point out that in the appellant's brief, he did raise issues as to the two state claims against the township, the malicious prosecution under state law and the intentional infliction of emotional distress under state law. But in page 26 of his reply brief, he indicates those claims do not apply to Superior Township. So I am not going to argue those today. What I would stick to is the substantive due process claim and the civil conspiracy claim, and my arguments mirror and reflect what my brother counsel for Appalese have argued. I would also add that if the court is looking at the shock, the conscience, going back to the Kale case, which I think appellant advocates for under a malicious due process type of claim, that here I would be remiss not to point out that the prosecutor did dismiss the first ticket because he did not think it was valid, and then issued a ticket that he did think or suggested the issuance of a ticket that he thought was more appropriately on point to the facts of the circumstance. I would argue that does not seem to shock the conscience in this case. I realize the court did not reach that below, but looking under that standard, I don't know that this case would be the vehicle for that conscious shocking or egregious behavior for those reasons. We had a prosecutor that looked at a law and thought, no, this doesn't seem to fit as well as this other one, and that was the second ticket that was brought before the state court judge who did find the plaintiff responsible. That was appealed, and the prosecutor did not respond. He missed a deadline and didn't move for extension of time. Appellant has argued that there's case law that says that essentially equals acquiescence. I would distinguish those cases only in as much as those are in the context of criminal actions where during the course of trial it was argued that the prosecutor engaged in misconduct that may have been outcome determinative in the trial, and then the prosecutor didn't argue otherwise on appeal. I would state that this is not this case. The state court found a civil infraction traffic violation and imposed a fine, a penalty, and the plaintiff took his state court appeal from that, which the prosecutor did not respond to and is a matter of process. The circuit court sitting as the state appeals court in that case reversed the ticket. Unless this court has any questions, I really don't have anything more to add that hasn't been in the brief or answered by my brother counsel. Okay, thank you. When I submit shocks to conscience and what raises the First Amendment issue is what was stated in the email exchange, which the district court does not even address. In the email exchange, the prosecutor states, also as you can see in his letter, he goes on about not being a disorderly person, which I feel he was. That's referencing my altercation with Deputy King. I raised my voice, I yelled, but there are ample Supreme Court precedents say a citizen is allowed to yell at an officer. I didn't use any profanity. I didn't threaten him physically, and so that was an exercise of First Amendment rights, which are protected under Supreme Court precedent, even involving a police officer. He then went on, another thought I have is if you feel that Mr. Sussman was in fact disorderly, i.e., by yelling, then we could also charge him with that. I would then be willing to dismiss the disorderly charge if he agrees to plead responsible to the failure to comply charge. But that was trying to use the plaintiff's First Amendment rights to essentially blackmail him into conceding to a charge that he didn't agree, that he had violated the statute. And then Mr. King responds, I think that is a great plan. There is evidence, I submitted, that supports the civil conspiracy charge, and the district court never addressed it, does not address any of this language. And in terms of malicious prosecution, there was a pendant state claim for malicious prosecution, which the district court also dismissed, but it was raised in conjunction with the constitutional claim. And the district court held that there wasn't evidence of malice. But under Michigan law, evidence of malice can be where a charge is made without the intent to bring the defendant to justice. Well, my position is there was no probable cause for that statutory claim. There was no officer directing traffic. And, again, I submit that you don't direct traffic. That requires a human being actually giving an order or giving guidance, not having a vehicle just blocking a lane and leaving another lane open or having its emergency lights on. Regarding sister counsel said that it was a civil infraction that was raised on appeal. That's not true. The first ticket was a civil infraction. The second ticket was a criminal misdemeanor. In fact, when I asked for a jury trial, originally Judge Cabey of the district court said, no, you're not entitled to a jury trial. And then he changed his mind and said, well, yeah, this is a criminal misdemeanor. You're entitled to a jury trial. And then the appeal was taken. The prosecutor didn't respond because he didn't ask for additional time. He just didn't file an appellate brief. And it was reversed. Under Michigan law, if a prosecutor fails to file an appellate brief, that's a concession that the defendant's arguments are valid. That's Michigan law. And it doesn't matter what the prosecutor is being accused of. If the prosecutor fails to file an appellate brief, that's a concession that the defendant's arguments are valid. And, therefore, regardless of the interpretation of the statute, I would submit that was an admission that there was no probable cause, that the arguments on appeal were valid, and he also failed to appeal the reversal by the Washington Circuit Court. And that's all I have to say. Thank you. Thank you. We appreciate the argument all three of you have given, and we'll consider the case carefully.